## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **SANDRA RUMANEK,** | : | **CIVIL ACTION NO. 1:17-CV-123** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner, MDPA,** |
| | : | **sitting by Designation)** |
| **v.** | : | |
| | : | |
| **SHERRY FALLON,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff Sandra Rumanek ("Rumanek"), proceeding *pro se*, advances various claims against attorneys, court staff, judicial officers, and others involved in two prior civil lawsuits: <u>Rumanek v. Coons</u>, No. N11C-04-108 (Del. Super. Ct. 2011), and <u>Rumanek v. Independent School Management, Inc.</u>, No. 1:12-CV-759 (D. Del. 2012).  She alleges that defendants conspired amongst themselves to violate her constitutional and civil rights by deliberately withholding information concerning United States Magistrate Judge Sherry R. Fallon's involvement in those lawsuits. Rumanek's operative and proposed amended pleadings lack any factual basis to support her speculative conspiracy theory.  We will grant defendants' motions to dismiss, deny Rumanek's requests for leave to amend, and dismiss the above-captioned action with prejudice.

### I.  Factual Background & Procedural History

Rumanek is an aggrieved litigant disappointed with the results of two prior lawsuits.  Rumanek avers that nearly everyone involved in those lawsuits—from her own counsel, to defense counsel, to judges, court staff, and public officials—actively

worked to achieve and conceal a fraud on the court and to effect a violation of her constitutional and civil rights. (See Doc. 93 at 1-4). The factual summation that follows derives from Rumanek's sixth amended complaint filed in this action, as well as the public record available in the state court litigation ("Rumanek I"), the federal litigation ("Rumanek II"), and judicial decisions entered in those cases.[1]

### A.  State Personal Injury Case: Rumanek I

In April 2011, Rumanek commenced a civil personal injury action in the Superior Court of Delaware arising out of two separate motor vehicle accidents. (See Doc. 93 ¶¶ 7, 11); Rumanek v. Coons, No. N11C-04-108 (Del. Super. Ct. 2011). Rumanek brought that lawsuit against two parties: Margaret Coons ("Coons"), who was the other driver in the first accident, and Theresa Theodore ("Theodore"), who was the other driver in the second accident. (See Doc. 93 ¶ 6); see also Rumanek v. Coons, No. N11C-04-108, 2013 WL 5288796, at *1 (Del. Super. Ct. Sept. 13, 2013). Rumanek claimed that she suffered head trauma and a cognitive disability as a result of the initial accident. See Rumanek, 2013 WL 5288796, at *1.

Defendant Joseph J. Rhoades ("Attorney Rhoades") represented Rumanek in the state court litigation. (Doc. 93 ¶ 6). Defendant Sandra F. Clark ("Attorney Clark") represented Coons during the bulk of pretrial proceedings, and defendant Louis J. Rizzo, Jr. ("Attorney Rizzo") took over the representation a few weeks

---

[1] Rumanek's operative pleading fully incorporates by reference all filings in Rumanek I and Rumanek II. (See Doc. 93 at 1-3). These filings, including docket sheets, pleadings, and docket entries, are matters of public record which the court may properly consider in ruling on a Rule 12(b)(6) motion. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); Zedonis v. Lynch, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) (same).

prior to trial. (Id.) Judge Fallon, then an attorney, represented Theodore in the early phases of the state court litigation; Judge Fallon withdrew her appearance upon appointment to the bench in March 2012.[2] (Id. ¶¶ 6-7, 27-28). Defendant David Culley ("Attorney Culley") succeeded Judge Fallon as Theodore's counsel. (Id.) Rumanek had not yet been deposed at the time of the substitution; hence, then-attorney Fallon never had contact with Rumanek. (See id. ¶¶ 7, 22, 27, 29). The case was assigned to Delaware Superior Court Judge Richard R. Cooch ("Judge Cooch"). (Id. ¶ 6).

After discovery and a pretrial conference, Theodore (presumably through Attorney Culley) presented an offer of judgment of $8,000 to settle Rumanek's claim against her. (Id. ¶ 119). Rumanek avers that Attorney Rhoades "pressure[d]" her to accept the settlement, advising that Rumanek "could not win against Theodore's counsel Culley." (Id.) Rumanek accepted the offer of judgment in late May 2013. (Id.) At approximately the same time, Rumanek learned that Judge Cooch "was being replaced" by defendant Superior Court Judge Charles E. Butler ("Judge Butler"). (Id. ¶ 105).

The case against Coons proceeded to jury selection on June 10, 2013, with trial commencing the following day. (Id. ¶¶ 131-32). Rumanek's injuries—the extent thereof and whether they were caused by the first accident with Coons, the second accident with Theodore, or neither—were a central issue at trial. Rumanek, 2013 WL 5288796, at *1. The jury found in Rumanek's favor on liability and awarded her

---

[2] Judge Fallon was initially named as a defendant in this case. The court dismissed all claims against Judge Fallon on judicial immunity grounds by order dated January 11, 2018. (Doc. 92 at 2 n.1).

nominal damages of $1. (Doc. 93 ¶ 134). According to Rumanek, Attorney Rhoades stated after the verdict "that the decision and the award made a successful appeal of the verdict very unlikely." (Id.)

Attorney Rhoades filed a motion for new trial. (Id. ¶ 135). Before the motion was filed, Rumanek asked Attorney Rhoades to challenge a statement by Attorney Rizzo during closing arguments that Rumanek was "double-dipping" by pursuing a federal disability discrimination claim against her employer. (See id. ¶¶ 136-38). Attorney Rhoades declined to raise the issue, indicating that the alleged statements did not appear in the trial transcript. (Id. ¶ 139). Rumanek hypothesizes that one of the state court stenographers—"perhaps" defendants Lisa Amatucci ("Amatucci"), Annette Furman ("Furman"), or Patrick O'Hare ("O'Hare"), purportedly at the behest of Judge Butler—altered the trial transcripts to remove these statements.[3] (Id. ¶ 140). Rumanek suspects that defendant Matthew Denn ("Attorney General Denn"), the Attorney General for the state of Delaware, is aware of and allows the secret alteration of transcripts and has thus clothed Delaware state court judges with power to "annul or evade" litigants' constitutional rights. (Id. ¶¶ 230, 232).

Attorney Rhoades' post-trial motion filed on June 27, 2013 raised the following arguments: that the jury verdict was against the weight of the evidence; that Attorney Rizzo's statements during closing arguments obscurely referencing

---

[3] Rumanek also speculates that Judge Butler directed either Furman or O'Hare to "alter the pre-trial conference transcript." (Id. ¶ 140). The only fact alleged as pertains the pre-trial conference transcript is that it lacked a "digital clock time-stamp" when produced to Rumanek which, in her view, "allows the record to be easily changed." (Id. ¶ 110). She does not allege or explain how the record of the pre-trial conference was purportedly altered. (See id. ¶¶ 110, 140).

insurance improperly influenced the jury; and that Judge Butler's instruction to the jury clarifying the meaning of the term "right to sue letter" likewise improperly influenced the jury.  (See id. ¶¶ 135-36); Rumanek, 2013 WL 5288796, at *1.  Judge Butler denied the motion.  (See Doc. 93 ¶ 144); Rumanek, 2013 WL 5288796, at *4.  Attorney Rhoades appealed Judge Butler's post-trial ruling.  The Supreme Court of Delaware affirmed Judge Butler's decision in an order without published opinion on February 25, 2014.  Rumanek v. Coons, 86 A.3d 1119 (Del. 2014) (unpublished table decision).

### B.    Federal Disability Discrimination Case: Rumanek II

On June 15, 2012—more than a year after she commenced the state court litigation and nearly a year prior to the jury's verdict—Rumanek filed a lawsuit in this court against her employer, Independent School Management, Inc. ("ISM").  (Doc. 93 ¶ 33); Rumanek, No. 1:12-CV-759, Doc. 1 (D. Del. June 15, 2012).  Rumanek alleged that ISM failed to accommodate injures resulting from the automobile accidents involved in Rumanek I.  See generally Rumanek v. Indep. Sch. Mgmt. Inc., 619 F. App'x 71 (3d Cir. 2015).  She asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; and two Delaware state laws concerning discrimination in employment.  Rumanek, 619 F. App'x at 73-74 & n.2.  Attorneys in the case acknowledged at the outset that some of the issues forming the basis of the state action were "inextricably intertwined" with the federal action, including

Rumanek's lost income, performance as an employee, and the reasons for her departure from employment. (Doc. 93 ¶ 53).

Rumanek alleges that Judge Fallon either "solicited" or "was assigned" to <u>Rumanek II</u> shortly after the case was filed. (<u>Id.</u> ¶ 34). Defendants Bernard Conaway ("Attorney Conaway"), Nicholas W. Woodfield ("Attorney Woodfield"), and R. Scott Oswald ("Attorney Oswald") represented Rumanek in that litigation.[4] (<u>Id.</u> ¶¶ 6, 33). Defendants Matthew Boyer ("Attorney Boyer"), Timothy M. Holly ("Attorney Holly"), and Mary I. Akhimien ("Attorney Akhimien") were counsel for ISM. (<u>Id.</u>) Rumanek avers that, by virtue of prior involvement in the state court litigation, Judge Fallon had knowledge of the material fact that "Rumanek was cognitively disabled by her injuries." (<u>Id.</u> ¶ 34).

On July 23, 2012, Judge Fallon convened a telephonic conference with the parties to discuss the court's referral process and provide the parties information concerning the procedures for consenting to magistrate judge jurisdiction. (<u>Id.</u> ¶ 36) During that conference, Judge Fallon advised the parties:

> One thing I want to point out to counsel, and particularly, I guess for the plaintiff as well, I'm fairly new to the bench. As you both may be aware, I took my position back at the end of April, and I come from a litigation firm, Tybout, Redfearn, and Pell, and I practiced there for over 25 years.
>
> I say and give you my background only because of the many, many cases that I handled, primarily through insurance companies who referred cases to me and members of my firm to defend in personal injury

_____
[4] Given the overlap between the cases, Attorney Rhoades eventually moved for Attorney Woodfield's *pro hac vice* admission in <u>Rumanek I</u>. (<u>See id.</u> ¶ 1).

litigation. I represented a number of individuals, and I no
longer have access to the firm's database to check for any
potential conflicts.

And the name of the plaintiff is kind of an unusual name.
It's not like Smith or Jones or anything like that. And for
whatever reason, it seems to have familiarity to me, and I
can't say why. And without access to my firm's database
anymore, I can't personally myself check for conflicts. All
that I can say is the name has a ring of familiarity. That's
it. If it's a matter that I handled or a member of my firm
handled, I can't speak to that. But what I would ask – just
because I don't want to get too deep into this and the[n]
have the plaintiff appear at a court conference or
something and possibly recognize me as someone who
may have represented her or one of my associates
represented her at the firm. I just can't recall.

I would ask that the plaintiffs meet with Ms. Rumanek
and mention to her, if you haven't already, my name. In
private practice, it was Sherry Ruggiero Fallon. The
court has shortened it to Sherry R. Fallon. But just [give]
her the full name, and see if that rings a bell with her.
Otherwise, we'll go forward.

And if it does, we'll have another teleconference to the
extent it poses a conflict for anyone. I don't feel it's a
conflict because, honestly, I don't remember anything
about Ms. Rumanek other than that's a familiar-sounding
name to me, and I can only assume that's from
somewhere along my 25 years of private practice.

(Id.) Attorney Woodfield advised Judge Fallon that he had mentioned her name to

Rumanek but would do so again and report back if there was an issue. (Id.) Judge

Fallon added:

I apologize. I wish I could give you more detail, but I
figured to err on the safe side and mention it because it
does have a ring of familiarity to me. Beyond that, I can't
recall a specific detail about a specific case I handled.

If it rings a bell with her, I think counsel . . . needs to
confer and see if that poses a real conflict. Because if you

come back and can provide me with more information, perhaps it will jog a further memory of what the case may be about.

In all likelihood, it may not be anything beyond defense of an auto accident case. And depending on whether or not it went to a jury trial, in all likelihood, it may have been sent to me, but I probably would have referred it to an associate in my office to handle short of a jury trial.

Anyway, so I appreciate counsel making an inquiry on that point.

(Id.) Rumanek reported to her counsel that she did not recognize Judge Fallon's name, and the case continued before Judge Fallon. (See id.)

On April 3, 2013, Judge Fallon held a telephonic conference with the parties to hear oral argument concerning a defense request for a psychiatric examination of Rumanek. (Id. ¶ 84). The following exchange took place during that conference:

| Mr. Conaway: | Your Honor? |
|---|---|
| The Court: | Yes[.] |
| Mr. Conaway: | Bernard Conaway. I apologize for interjecting. During the course of the hearing, there was reference made to a state action and I took it upon myself to go to the docket and see what's going on. |
| The Court: | I appreciate that. What's happening in that[?] |
| Mr. Conaway: | Unfortunately, what I had noticed is that Your Honor had entered an appearance in that case on behalf of one of the defendants. |
| The Court: | And I did bring this to the attention of everyone with regard – I did no activity in this case and that case was |

8

|  |  |
|---|---|
|  | assigned to my partner David [Culley] . . . and I think it was in it's [sic] fairly early stages when that case came into our office and was assigned to my partner. |
| Mr. Conaway: | I apologize if it's already been addressed but I was in panic mode. |
| The Court: | When this case was referred to me by Judge Robinson, I mentioned that and the fact that it was referred to my partner, that I did not actively do anything with regard to the defense in that case and if the docket shows otherwise, you will have to refresh my recollection, Mr. Conaway, but I don't recall taking an active role in the case. |
| Mr. Conaway: | All I noticed, Your Honor, is that there was an Answer filed on behalf of one of the co-defendants and they got Notice of Records Request. There's an entry of appearance on behalf of Sherry Fallon for defendant Teresa (sic) Theodore and thereafter, Answers to the Complaint and some request for records. Here is where I'm coming from, Your Honor, and I'm sorry to interject if this is old ground but I was unaware of it but I felt compelled to raise it if it hadn't been because I didn't think I should sit and do nothing. |
| The Court: | No. You did the right thing. I addressed it with all counsel on the original teleconference when we were doing the Rule 16 and indicated that I would recuse myself if it posed an issue for anyone. |
| Mr. Conaway: | And in the infamous words of – never mind. |

| The Court: | Well, again, I can tell you I have no recollection of Ms. Rumanek. I did not take her deposition in that case and I don't recall when the complaint was filed. I left my firm in April of 2012 so to the extent activities occurred before, then there should be a substitution of counsel in and around April of 2012. I honestly don't recall much activity that I took part in prior to the substitution. |
|---|---|
| Mr. Conaway: | Thank you, Your Honor. I feel like I just kicked the apple cart over. |
| The Court: | Naturally, I appreciate you bringing it up again, Mr. Conaway. I thought it was a dead issue. If that causes concern for counsel, we will have to address it. I will represent to counsel that I have no recollection of Ms. Rumanek and I don't feel it affects my ability to go forward in this case, but naturally, if that poses an issue for counsel, we should address it and address it quickly so that the case could be reassigned if that poses any issue for anyone. |
| Mr. Woodfield: | Good morning, your Honor. This (sic) Nick Woodfield. Mr. Conaway is local counsel and he just raised this issue and I was somewhat surprised and then as you explained it, I remember you mentioning it in the beginning but you didn't do any work on it. Now, I remember that and we had resolved the conflict issue at the outset. |
| The Court: | Mr. Holly, if you have any comments with the regard to that? |
| Mr. Holly: | Your Honor, I thought we had resolved it. I thought that was water |

| | | |
|---|---|---|
| | under the bridge, but we have no issue. | |
| The Court: | Okay. Thank you, counsel. | |

(Id. ¶ 85).  With no request for recusal from any party, the case continued before Judge Fallon.

ISM moved for summary judgment on each of Rumanek's claims.  Judge Fallon granted in part and denied in part ISM's motion.  Judge Fallon dismissed Rumanek's claim for retaliation under the ADA and its state law counterpart as well as the FMLA, but allowed her Title VII and state law retaliation claims, alleging retaliation based on a threat to file a charge of discrimination, to proceed to trial.  (Id. ¶ 147); Rumanek v. Indep. Sch. Mgmt., Inc., 50 F. Supp. 3d 571, 578-587 (D. Del. 2014).  Trial began on January 13, 2014.  (Doc. 93 ¶ 148).  According to Rumanek, Attorney Woodfield instructed her that, because Judge Fallon had dismissed the ADA claim, Rumanek could not testify concerning her perceived disability.  (See id. ¶¶ 149-50).  Rumanek avers that Attorney Woodfield further warned that "she would be fined and/or jailed" if she so testified.  (See id.)  The jury returned a verdict for ISM on the remaining retaliation claim.  (Id. ¶ 155).

Rumanek asked her attorneys to file a post-trial motion but they declined, responding that certain evidence, if credited by the jurors, supported the verdict.  (Id. ¶¶ 157-59).  Counsel also advised that the likelihood of success on appeal was "low" and that, given the slim chance of success, they would not file a post-trial motion or an appeal unless Rumanek prepaid additional fees.  (Id. ¶¶ 160, 163-67).  On February 6, 2014, Rumanek terminated her counsel and filed a post-trial motion

*pro se.* (See id. ¶¶ 168-79). Attorney Holly contacted Rumanek to advise that ISM was willing to forego its $10,432.74 bill of costs if Rumanek withdrew her post-trial motion and "any further process." (Id. ¶ 181). Attorney Holly indicated that her firm would continue to assist Rumanek with this paperwork if she desired. (Id.) Rumanek did not respond. (Id.)

On June 3, 2014, Judge Fallon denied Rumanek's motion. (Id. ¶ 184). Rumanek appealed to the Third Circuit Court of Appeals. Rumanek's *pro se* appellate brief noted, *inter alia*, that Judge Fallon had been familiar with her last name, and Rumanek expressed suspicion that Judge Fallon may have been biased against her. See Informal Brief for Rumanek at 32, Rumanek v. Indep. Sch. Mgmt., Inc. 619 F. App'x 71 (3d Cir. 2015) (No. 14-1472). On July 21, 2015, the Third Circuit affirmed Judge Fallon's summary judgment and post-trial rulings.[5] Rumanek, 619 F. App'x 71. The Supreme Court denied Rumanek's petition for writ of *certiorari* on January 11, 2016. See Rumanek v. Indep. Sch. Mgmt. Inc., 136 S. Ct. 847 (2016).

Rumanek claims to have learned for the first time of Judge Fallon's limited involvement in Rumanek I on January 27, 2016. (Doc. 93 ¶ 201). On November 18, 2016, she filed a Rule 60(b) motion in Rumanek II seeking to set aside the judgment on the basis of fraud. (Id. ¶ 202); Rumanek, No. 1:12-CV-759, Doc. 197. Rumanek followed her initial Rule 60(b) motion with several motions to amend and a number of additional miscellaneous motions. See Rumanek, No. 1:12-CV-759, Docs. 197-205.

---

[5] Rumanek asseverates that this opinion "makes clear" Judge Fallon's "utter disregard of the laws" and the "malevolence of [Judge] Fallon's co-conspirators." (Id. ¶ 186). To be clear, the opinion contains no such intimation. To the contrary, the court sequentially addressed and squarely rejected each of the alleged errors submitted by Rumanek on appeal. See Rumanek, 619 F. App'x at 76-80.

The Chief Judge of the Third Circuit Court of Appeals thereafter designated both Rumanek II and the above-captioned action to the undersigned pursuant to 28 U.S.C. § 292(b).  (See Doc. 88); Rumanek, No. 1:12-CV-759, Doc. 215.  We promptly established a briefing schedule for Rumanek's motions.  Rumanek, No. 1:12-CV-759, Doc. 216.

On November 21, 2017, we issued an order denying Rumanek's motions.  Id., Doc. 220.  Therein, we assumed for the sake of argument that Judge Fallon's earlier involvement in Rumanek I required disqualification in Rumanek II under 28 U.S.C. § 455(b), and we recognized that, in certain cases, a violation of Section 455(b) may warrant relief under Rule 60(b).  See id.  We held, however, that any error by Judge Fallon was harmless.  Id.  Specifically, we found that any "diminished confidence in Judge Fallon's decisions . . . is rectified in large part by the fact that an impartial jury returned a verdict on the claims that remained for trial and [is] restored in full by the fact that an impartial Third Circuit panel conducted a *de novo* review of Judge Fallon's summary judgment rulings and affirmed same."  Id.  The Third Circuit recently affirmed our ruling.  Rumanek v. Indep. Sch. Mgmt. Inc., No. 17-3639, 2018 WL 3694902, at *2-3 (3d Cir. Aug. 3, 2018) (nonprecedential).

## C. Conspiracy Allegations

The instant litigation concerns Rumanek's belief that all defendants conspired against her to defeat her prior lawsuits.  Rumanek avers broadly that Judge Fallon knew she should recuse herself from the outset of Rumanek II, that Judge Fallon "had seen virtually all the evidence" regarding Rumanek's disability during her involvement in Rumanek I, and that Judge Fallon knew this evidence

"was likely to result in a significant monetary loss to . . . State Farm," her former client and a then-current client of her former law firm. (See id. ¶¶ 37-39, 101, 103). Rumanek alleges that Judges Butler and Cooch and Attorneys Akhimien, Boyer, Clark, Conaway, Culley, Holly, Oswald, Rhoades, Rizzo, and Woodfield knew of Judge Fallon's conflict and conspired with her to conceal this "fraud." (See, e.g., id. ¶¶ 40, 42-43, 45-47, 54, 56-59, 68, 74, 85-88, 113-16, 124-27, 153-54, 188-91). Rumanek asserts that it was defendants' collective intent to protect State Farm and their own financial interests, and to prevent large plaintiffs' verdicts in the future, by keeping the case from making it to a jury trial and manipulating the evidence and the trial once her claims proceeded. (Id. ¶¶ 74, 141).

Rumanek posits that other defendants each played a role—albeit a less central one—in bringing about her state and federal court losses. She asserts that Amatucci, Furman, and O'Hare, at Judge Butler's or Judge Cooch's direction and without objection from Attorney General Denn, secretly altered court transcripts to conceal the alleged fraud. (See id. ¶¶ 140, 230, 232). She maintains that Attorney General Denn in fact authorizes such practices. (Id. ¶¶ 230, 232). She claims that defendant Superior Court Administrator Susan Judge ("Judge") failed to respond to emails during the lead-up to this lawsuit and eventually advised Rumanek that all correspondence must go through the court's counsel. (Id. ¶¶ 214-15, 218-20, 224-25). Rumanek claims that defendant Robert Cruikshank ("Cruikshank"), intake supervisor in this district's clerk's office, made a docketing error in Rumanek II by removing the first page of Rumanek's objections to ISM's bill of costs and replacing it with the first page of a different filing. (Id. ¶ 246). She oppugns Amatucci's and

Judge's non-response to her litigation-related emails while this lawsuit has been pending.  (Id. ¶¶ 216-17, 220, 222-23).

**D.  Procedural History**

Rumanek commenced the above-captioned action on February 3, 2017, while her Rule 60 motions were pending in Rumanek II.  All named defendants moved to dismiss her complaint, and Rumanek answered with a bevy of motions seeking to amend her initial pleading.  Upon reassignment of the case to the undersigned, in attempt to bring order to the docket, we issued an order (1) authorizing Rumanek to file her sixth amended complaint but expressly admonishing that the court would not entertain further requests to amend; (2) dismissing Judge Fallon as a defendant on judicial immunity grounds; (3) terminating the State of Delaware as a defendant based on the state being removed from Rumanek's sixth amended complaint; (4) directing service on all newly-added defendants; and (5) establishing a Rule 12 motion practice and briefing schedule.  (Doc. 92).

Rumanek's pleading identifies 19 defendants: Attorneys Akhimien, Boyer, Clark, Conaway, Culley, Holly, Oswald, Rhoades, Rizzo, and Woodfield; Judges Butler and Cooch; Attorney General Denn; Delaware Superior Court employees Judge, O'Hare, Furman, and Amatucci; District of Delaware employee Cruikshank; and Delaware State Police Officer Spillan IBM 770 ("Officer Spillan"), who is not mentioned elsewhere in the complaint.  Rumanek invokes 42 U.S.C. § 1983 and the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. § 1985, Title VII, the ADA, the FMLA, and the American Bar Association's Model Code of Professional Conduct.  Rumanek asks this court to

remove Judge Fallon from the bench; to initiate impeachment proceedings against Judges Butler and Cooch and disbarment proceedings against all named private attorneys; to award Rumanek $32,000,000 in compensatory and punitive damages; to cause an investigation of the Delaware state courts to be undertaken; and to require Delaware state courts to prospectively create audio and video recordings of all proceedings to be provided to parties, together with a written transcript, free of charge. Defendants seek dismissal of Rumanek's sixth amended complaint without further leave to amend.

## II.    **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

III.    **Discussion**

The provenance of Rumanek's claims is her belief that defendants collectively conspired to conceal from her that the presiding judge in her federal employment discrimination litigation had participated briefly in her state court personal injury litigation.  Rumanek theorizes that defendants were motivated by professional and financial interests to deprive her of this information.  Her sixth amended complaint is 105 pages long, incorporates 41 exhibits, and includes 249 paragraphs chronicling every turn of the earlier lawsuits.  Notwithstanding the sheer volume of information provided, Rumanek's complaint fails to elevate her

conspiracy theory from conjecture to plausibility. For the reasons that follow, the court will dismiss Rumanek's sixth amended complaint.[6]

## A.    Judicial Defendants

Judges Butler and Cooch invoke the doctrine of absolute judicial immunity in answer to Rumanek's claims against them. A judge is immune from liability for all actions taken within his or her judicial capacity. See Mireles v. Waco, 502 U.S. 9, 9 (1991); Forrester v. White, 484 U.S. 219, 225-27 (1988). Supreme Court precedent is clear: "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (citation omitted); Newton v. City of Wilmington, 206 F. Supp. 3d 947, 954 (D. Del. 2016) (quoting Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184 (3d Cir. 2009)). Whether a judge acted in a judicial capacity turns on "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge," and "the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362.

---

[6] We are cognizant that courts should grant leave to amend before dismissing a curable pleading in civil rights cases unless amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). In addition to responding to defendants' motions to dismiss, Rumanek has moved for leave to file proposed seventh, eighth, ninth, and tenth amended complaints. (Docs. 116, 123, 126, 135). We have reviewed each of these proposed pleadings in assessing whether to grant leave to amend in the matter *sub judice*.

Rumanek avers that Judges Butler and Cooch were not acting in a judicial capacity in the context of her instant claims. (Doc. 116 at 3). She asserts that acts such as

> racketeering with counsel, court personnel and state police with the intent to obstruct justice in each other's court, committing fraud on the courts, tampering with proceedings, tampering with proceeding records, tampering with witnesses, tampering with a victim, retaliating against a victim for filing a complaint, etc.

are not "functions normally performed by a judge" as contemplated by immunity jurisprudence. (Id.) We agree insofar as the legal principle goes: it is undisputed that judicial officers are not entitled to immunity for acts taken beyond the bounds of their judicial authority. See Stump, 435 U.S. at 362.

The trouble with Rumanek's assertion is that her pleading is devoid of facts supporting her claim that either judge engaged in the extrajudicial conduct summarily alleged. (See generally Doc. 93). *Per contra*, she claims that Judges Butler and Cooch failed to take action when they learned—within the context of their judicial positions and in litigation then-pending before them—that Judge Fallon had been involved in the state court litigation as lawyer and in the federal court litigation as judge. Rumanek does not allege that either defendant judge took any affirmative act beyond the scope of their jurisdiction or their judicial capacities. Both judges are thus entitled to judicial immunity. Because Rumanek's proposed amended pleadings also lack *allegata* adequate to surmount the judge's absolute immunity, we will dismiss the claims against Judges Butler and Cooch with prejudice.

**B.     Judicial Employee Defendants**

Like judicial immunity, the doctrine of absolute quasi-judicial immunity insulates from suit those public officials who act in accordance with their duties or at the direction of a judicial officer.  See Gallas v. Supreme Court of Pa., 211 F.3d 760, 770-72 (3d Cir. 2000).  Quasi-judicial immunity attaches when a public official's role is "functionally comparable to that of a judge," Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 95 (3d Cir. 2011) (quoting Hamilton v. Leavy, 322 F.3d 776, 785 (3d Cir. 2003)), or when a public official acts pursuant to a court order, Hamilton v. Leavy, 322 F.3d 776, 782-83 (3d Cir. 2003) (citing Wolfe v. City of Pittsburgh, 140 F.3d 236, 240 (3d Cir. 1998); Richman v. Sheahan, 270 F.3d 430, 437 (7th Cir. 2001)).

Defendants cite Marcedes v. Barrett, 453 F.2d 391 (3d Cir. 1971), for the proposition that court reporters acting in an official capacity necessarily are entitled to quasi-judicial immunity.  (Doc. 112 at 2-3).  A number of courts have continued to rely on Marcedes for this principle as well, positing that the doctrine provides a shield for all court reporters "who are acting in their official capacities."  Shahin v. Darling, 606 F. Supp. 2d 525, 543 (D. Del. 2009) (citing, *inter alia*, Marcedes, 453 F.2d 391; Davis v. Philadelphia County, 195 F. Supp. 2d 686, 689 (E.D. Pa. 2002)); Davis, 195 F. Supp. 2d at 688 (citing Marcedes, 453 F.2d at 391).  These opinions do not adequately account for the Supreme Court's decision in Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993), which expressly holds that court reporters do not exercise the sort of "discretionary judgment" underpinning the doctrine of judicial immunity.  See id. at 435-37.

Courts have extended <u>Antoine</u>'s admonitory principles beyond court reporters, to staff including prothonotaries and clerks of court, emphasizing that a court employee cannot claim immunity for ministerial acts. <u>See</u> <u>Tucker v. I'Jama</u>, 173 F. App'x 970, 971-72 (3d Cir. 2006) (nonprecedential) (state court clerk of court not entitled to quasi-judicial immunity after <u>Antoine</u>); <u>Johnson v. Person</u>, No. 16-CV-5287, 2018 WL 1566748, at *2 (E.D. Pa. Mar. 30, 2018) (same for prothonotary). It follows from <u>Antoine</u> that court staff are not entitled to immunity solely by virtue of their official positions; rather, our inquiry must be whether the challenged action involves the exercise of discretion akin to the function of a judge, <u>see</u> <u>Tucker</u>, 173 F. App'x at 971 & n.1 (citing <u>Antoine</u>, 508 U.S. at 436), or is taken pursuant to a facially valid court directive, <u>see</u> <u>Hamilton</u>, 322 F.3d at 782-83.

We cannot say that the actions of the defendant court reporters and other court personnel fall within the first category. Rumanek alleges that court reporter defendants Amatucci, Furman, and O'Hare made alterations to pretrial and trial transcripts in <u>Rumanek I</u>, that court administrator Judge failed to respond timely to emails and eventually referred Rumanek's correspondence to the court's counsel, and that intake supervisor Cruikshank made a docketing error in <u>Rumanek II</u> by placing an incorrect cover page on her objections to ISM's bill of costs. These are ministerial functions with no element of judge-like discretion.

Amatucci, Furman, and O'Hare are nonetheless entitled to quasi-judicial immunity based on Rumanek's allegation that they altered transcripts at Judge Butler's direction. As noted <i>supra</i>, when a public official acts "pursuant to court directive," the public official is entitled to share in the judge's immunity. <u>Smith</u>

v. Laster, 787 F. Supp. 2d 315, 319 (D. Del. 2011) (citing Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir. 1969)); see also Hamilton, 322 F.3d at 782-83. Rumanek's own complaint avers that each of the court reporter defendants acted pursuant to an alleged court directive. We will dismiss all claims against Amatucci, Furman, and O'Hare with prejudice on the basis of quasi-judicial immunity.[7] The same cannot be said for Judge and Cruikshank, as the complaint contains no allegation that either defendant acted pursuant to a judicial order. We proceed to the merits of the claims against Judge, Cruikshank, and the remaining defendants.

## C. Section 1983 Claims

Rumanek asserts a Section 1983 claim against Attorneys Akhimien, Boyer, Clark, Conaway, Culley, Holly, Oswald, Rhoades, Rizzo, and Woodfield, as well as Attorney General Denn, Officer Spill, and court employees Judge and Cruikshank, for deprivation of her "Constitutional substantive and due process and civil rights" and for "tortious acts and injury under the First Amendment, Fifth, Eighth, and Fourteenth Amendments." (Doc. 93 at 1). Defendants raise timeliness and merits arguments in opposition to Rumanek's claims.

---

[7] Assuming *arguendo* that Amatucci, Furman, and O'Hare were not immune from suit, Rumanek fails to articulate a constitutional claim against them. The Third Circuit has held that parties "do not have a constitutional right to a totally accurate transcript," Tedford v. Hepting, 990 F.2d 745, 747 (3d Cir. 1993), and an error in a pretrial or trial transcript does not amount to a constitutional violation unless the plaintiff demonstrates that it is "substantial enough to call into question the validity of the appellate process in the state courts," Carpenter v. Vaughn, 296 F.3d 138, 155 (3d Cir. 2002) (quoting Tedford, 990 F.2d at 747). Rumanek asserts cursorily that the transcript alterations deprived her of her constitutional and civil rights but pleads no facts concerning the nature of the alleged alterations or how exactly those alterations impacted the result on appeal.

1.    ***Statute of Limitations***

Section 1983 claims are governed by the state's statute of limitations applicable to personal injury actions. <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 126-27 (3d Cir. 2006). The Delaware statute of limitations for personal injury claims—and thus for Section 1983 claims—is two years from the date the cause of action accrued. <u>See</u> <u>Smith v. Delaware</u>, 236 F. Supp. 3d 882, 888 (D. Del. 2017) (citations omitted). A cause of action under Section 1983 accrues when a plaintiff "knew or should have known of the injury upon which its action is based." <u>Sameric Corp. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998). A court may dismiss a claim on statute of limitations grounds only when the defense is "apparent on the face of the complaint." <u>Wisniewski v. Fisher</u>, 857 F.3d 152, 157-58 (3d Cir. 2017) (citing <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014)).

Defendants identify various dates on which they believe Rumanek's instant claims accrued. Attorney Rhoades contends that Rumanek should have known of a potential cause of action on June 27, 2012 when the federal lawsuit was assigned to Judge Fallon. (<u>See</u> Doc. 49 at 13-14). Attorneys Oswald, Woodfield, and Conaway maintain that Rumanek was at minimum on "constructive" or "inquiry" notice in July 2012 following the conference with counsel during which Judge Fallon noted that Rumanek's last name "rang a bell" with her and counsel so advised Rumanek. (Doc. 79 at 18-19; <u>see</u> <u>also</u> Doc. 65 at 12). And Attorneys Boyer, Holly, and Akhimien assert that, at the latest, Rumanek was on notice of her potential claim by July 30, 2014, when Rumanek filed her appellate brief with the Third Circuit expressing

suspicion that Judge Fallon was biased against her. (Doc. 70 at 7-8, 17-19 (quoting Informal Brief for Rumanek, *supra*, at 32)).

We disagree with the attorney defendants' suggestions. The crux of this litigation is Rumanek's claim that Judge Fallon presided over Rumanek's federal employment discrimination case despite a disqualifying conflict of interest arising from the state court personal injury case, and that Rumanek was kept in the dark with respect to this conflict for the duration of both cases. Rumanek claims that she was unaware of Judge Fallon's earlier involvement until January 27, 2016, when she accessed the docket in <u>Rumanek I</u> and "was stunned to find" that Judge Fallon represented Rumanek's adversary in that case. (Doc. 93 ¶ 201). Assuming the truth of this allegation as we must, Rumanek's complaint filed February 3, 2017 is timely.[8]

### 2. *Merits*

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. <u>Gonzaga Univ. v. Doe</u>, 536

---

[8] We are compelled to accept Rumanek's *allegata* as true at this juncture. Nonetheless, we must note that material inconsistencies in Rumanek's allegations raise serious doubts about their veracity. Rumanek avers, for example, that Judge Fallon committed fraud on the court by failing to recuse pursuant to 28 U.S.C. § 455 when the federal lawsuit was assigned and that Rumanek did not learn of Judge Fallon's disqualifying interest in the federal lawsuit until January 27, 2016. In other words, Rumanek contends that, prior to January 27, 2016, she was wholly unaware of Judge Fallon's alleged violation of Section 455(b). But Rumanek also claims that she discovered Judge Fallon's involvement in <u>Rumanek I</u> in the course of reviewing the state docket to "pull together data to file a Rule 60 Motion, *to include fraud upon the court re: Fallon's violation of 28 U.S.C. § 455(b)(1)(2)(e),*" (Doc. 93 ¶ 201 (emphasis added)), suggesting that Rumanek was already aware of and preparing to address Judge Fallon's ostensible conflict of interest well before January 27, 2016.

U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state

a Section 1983 claim, a plaintiff must show a deprivation of a "right secured by the

Constitution and the laws of the United States . . . by a person acting under color of

state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d

1137, 1141 (3d Cir. 1995)).

### a.  Color of State Law

The attorney defendants assert that they are private actors who cannot be

held liable under Section 1983. In her sixth amended complaint, Rumanek rejoins

that, by virtue of their status as licensed officers of the court, all defense counsel

"were at the time 'clothed with the authority of state law.'" (Doc. 93 ¶ 192). She

further argues that by conspiring with state actors to violate constitutional rights,

the attorney defendants became subject to Section 1983 liability. (Id. ¶ 248). We

address Rumanek's arguments *seriatim*.

Liability under Section 1983 is premised on action taken under color of

state law. See 42 U.S.C. § 1983. To prevail on a Section 1983 claim, a plaintiff must

establish that "a state actor" deprived her of a federal constitutional or statutory

right. See Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (citation omitted). It is well

settled that private attorneys will not be considered state actors "solely on the basis

of their position as officers of the court." Angelico v. Lehigh Valley Hosp., Inc., 184

F.3d 268, 277 (3d Cir. 1999) (citing Polk County v. Dodson, 454 U.S. 312, 318 (1981)).

This is true whether the private attorney was counsel to the plaintiff or to her

former adversary. See Limehouse v. Delaware, 144 F. App'x 921, 923 (3d Cir. 2005)

(nonprecedential) (citing Polk, 454 U.S. at 318). We reject Rumanek's assertion that

Attorneys Akhimien, Boyer, Clark, Conaway, Culley, Holly, Oswald, Rhoades, Rizzo, and Woodfield are liable under Section 1983 based solely on membership in the state bar.

Rumanek alternatively avers that the attorney defendants are liable under Section 1983 based on purported collusion with judges and court officials who are indisputably state actors. A private party "who corruptly conspires with a judge" acts under color of state law for purposes of Section 1983. <u>Great W. Mining & Mineral Co. v. Fox Rothschild, LLC</u>, 615 F.3d 159, 175-76 (3d Cir. 2010) (quoting <u>Dennis v. Sparks</u>, 449 U.S. 24, 29 (1980)), <u>cert. denied</u>, 563 U.S. 904 (2011) (mem.). Stated differently, a plaintiff can establish state action by demonstrating that a private actor was "a willful participant in joint action" with a state actor or "jointly engaged with state officials in the challenged action." <u>Dennis</u>, 449 U.S. at 27-28.

It is not enough for an aggrieved litigant to simply identify the attorneys involved in prior litigation and invoke a joint-action theory. <u>See</u> <u>Mikhail v. Kahn</u>, 991 F. Supp. 2d 596, 645-46 (E.D. Pa. 2014) (quoting <u>Dennis</u>, 449 U.S. at 28; <u>Great W. Mining & Mineral Co.</u>, 615 F.3d at 178). "[A] bare assertion of conspiracy will not suffice." <u>Great W. Mining & Mineral Co.</u>, 615 F.3d at 178 (quoting <u>Twombly</u>, 550 U.S. at 556). Nor will blanket "allegations of judicial error, *ex parte* communications[,] . . . or adverse rulings," without more, support a conspiracy claim. <u>Capogrosso</u>, 588 F.3d at 184-85 (quoting <u>Crabtree v. Muchmore</u>, 904 F.2d 1475, 1481 (10th Cir. 1990)). Rather, a plaintiff must plead facts establishing an "agreement between" the involved judges and alleged private coconspirators to

deprive her of federal constitutional or statutory rights.  Great W. Mining & Mineral Co., 615 F.3d at 178.

Rumanek's pleadings fall far short of meeting this burden.  Rumanek chronicles with detail the nature of each attorney's involvement in her state and federal lawsuits.  (See generally Doc. 93).  But her pleading is devoid of a single factual allegation—beyond conjecture and conclusory assertions—that any of the attorneys identified as defendants agreed with any state actor to deprive Rumanek of her constitutional or statutory rights.  At best, Rumanek's complaint establishes (1) that the attorneys were involved in either Rumanek I, Rumanek II, or both, (2) that the attorneys became aware of and waived Judge Fallon's disqualifying conflict of interest in Rumanek II, and (3) that Rumanek did not prevail in either lawsuit.  Even viewed in the light most favorable to Rumanek, we cannot infer an agreement to conspire from these facts.  Rumanek's proposed amended pleadings are likewise long on conspiracy theory but short on substantiating facts.  We will dismiss the Section 1983 claims against the attorney defendants without leave to amend.

### b. <u>Violation of Constitutional or Statutory Right</u>

Attorney General Denn, Officer Spillan, Superior Court employee Judge, and federal court employee Cruikshank do not dispute that they are state actors.  Each defendant asserts qualified immunity as an affirmative defense to Rumanek's Section 1983 claims.  We agree that the doctrine of qualified immunity shields Attorney General Denn, Officer Spillan, Judge, and Cruikshank from suit.

Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual

acted.  Pearson v. Callahan, 555 U.S. 223, 244-45 (2009).  No liability will attach if a reasonable actor could have believed the challenged conduct was in compliance with settled law.  Id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). The doctrine cloaks government officials with "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted), and "ensure[s] that insubstantial claims against government officials [will] be resolved prior to discovery." Pearson, 555 U.S. at 231-32 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)).  The defense generally shields "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  The burden to establish qualified immunity rests with the defendant claiming its protection.  Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A court evaluating a claim of qualified immunity considers two distinct inquiries: whether, based on the record evidence, a constitutional right has been violated and, if so, whether the right was "clearly established" at the time of the alleged violation.  Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232).  A court may begin its qualified immunity analysis with either prong.  See Pearson, 555 U.S. at 237.

As a preliminary matter, Rumanek does not articulate with any degree of specificity exactly which constitutional or statutory right she believes defendants violated.  Her sixth amended complaint is peppered with invocations of the First, Fifth, Eighth, and Fourteenth Amendments, fleeting references to "substantive due process" and "equal protection," broad assertions of "conspiracy," and the

claim that defendants collectively sought to "obstruct justice." (See generally Doc. 93). Determining whether the rights alleged by Rumanek are "clearly established" would prove a difficult endeavor. We find, however, that Rumanek has not alleged a violation of a constitutional right against these four defendants; thus, we need not determine whether Rumanek can satisfy the first qualified immunity prong. See Pearson, 555 U.S. at 237.

### i. Judge and Cruikshank

Rumanek's sixth amended complaint fails to articulate any constitutional violation by Judge or Cruikshank. The sole allegation against court administrator Judge is that she ignored Rumanek's emails for a period of time before eventually referring Rumanek to the court's counsel for all future communications. (See Doc. 93 ¶¶ 214-15, 218-20, 224-25). Rumanek avers that Cruikshank made a docketing error by swapping the first page of two different filings. (Id. ¶ 246). These facts simply do not rise to the level of a constitutional, statutory, or civil rights violation, nor do they in any way permit the inference that Judge or Cruikshank conspired with other defendants to violate those rights.

In her proposed tenth amended complaint, Rumanek purports to add substance to her claims against Judge and Cruikshank. As to Judge, Rumanek simply reiterates displeasure with Judge's non-response to various emails. (Doc. 135-1 ¶¶ 214-15, 218-20, 224-25). Rumanek's proposed amendments confirm that she cannot cure her pleading deficiency as pertains to Judge. We will thus dismiss Rumanek's Section claims against Judge without leave to amend.

As for Cruikshank, Rumanek's proposed pleading attempts to elaborate on her theory of liability: she cites an additional docketing error and speculates that Cruikshank, by failing to upload portions of certain documents, was attempting to "remove the evidence of [Judge] Fallon's fraud." (Id. ¶ 202). Her new allegations are flatly contradicted by Rumanek's own allegations and the record in Rumanek v. Independent School Management, Inc., No. 1:17-CV-759 (D. Del.), which Rumanek has fully incorporated into and asks the court to consider in her sixth amended complaint. (Doc. 93 at 1-3).

Rumanek's principal charge against Cruikshank is that he removed portions of a transcript before filing it with the court and instead filed "only a few pages from the front of the transcript . . . along with the entire index." (Doc. 135-1 ¶ 202). She claims that Cruikshank omitted that portion of the transcript which documents Judge Fallon's April 3, 2013 discussion with counsel regarding her involvement in Rumanek I. (Id.) Rumanek concedes that the clerk's office remedied the omission immediately upon receiving a telephone call from her on December 12, 2016, and the docket supports that fact. (See id.) Indeed, the undersigned considered the full transcript in ruling on Rumanek's eventual Rule 60 motion in that case. Rumanek, No. 1:17-CV-759, Doc. 220 at 2. The claim that Cruikshank deliberately concealed the transcript to Rumanek's detriment is baseless.

Rumanek further avers that a clerk's office employee removed page three of a reply brief submitted in this action on May 22, 2017 to obscure Rumanek's claim of conspiracy. (Doc. 135-1 ¶ 246). A correcting entry dated May 23, 2017 reflects that the error was remedied the next day, shortly after Rumanek contacted the clerk's

office to flag the issue.  Rumanek also alleges that Cruikshank advised her that the clerk's office would not process the summons submitted with her proposed fourth amended complaint until the court ruled on her request for leave to amend.  (Id.) Assuming the truth of these amended allegations *in toto*, they do not establish a constitutional violation by Cruikshank.  We will deny leave to amend the Section 1983 claims against Cruikshank.

### ii.    Officer Spillan

Rumanek also fails to plead a constitutional violation against Officer Spillan. In her sixth amended complaint, Rumanek identifies Officer Spillan as a defendant in the caption, (Doc. 93 at 1), and explains on page six that he is a state police officer, (id. ¶ 7).  She offers no additional factual allegations as to Officer Spillan and asserts no specific claims against him.  Rumanek's proposed amended pleadings do little to cure this deficiency.  In her proposed tenth amended complaint, Rumanek offers only that a "police report by 'Office Spillan' was falsified," that "Spillan and one or more other Delaware State Police Officers conspired to and did give false testimony at trial as part of the defendants' conspiracy to obstruct justice," and that despite his trial testimony that he responded to the scene of Rumanek's first motor vehicle accident, Rumanek did not recognize Officer Spillan as the responding officer.  (Doc. 135-1 ¶¶ 14, 236, 242).  None of these claims amount to a constitutional, statutory, or civil rights violation, nor do they support Rumanek's conclusory claim that Officer Spillan participated in a conspiracy to deprive Rumanek of her rights. We will dismiss any claims against Officer Spillan with prejudice.

### iii.    Attorney General Denn[9]

Rumanek's 249-paragraph sixth amended complaint references Attorney General Denn less than a dozen times.  She identifies him as the Attorney General of the state of Delaware, (Doc. 93 ¶ 6); claims that he "allows" the state's courts to alter transcripts, (id. ¶¶ 230, 232); avers that he does not want to answer questions about the alleged alterations and that she feared for her safety naming him in this lawsuit, (id. ¶¶ 228, 242), and remonstrates broadly that Attorney General Denn is participating in a sweeping conspiracy to deprive Rumanek of her constitutional, statutory, and civil rights, (see id. ¶¶ 221, 237, 249).  These allegations are vague and conclusory in nature and do not support a plausible Section 1983 claim against Attorney General Denn.

Rumanek's proposed tenth amended complaint fares no better.  Rumanek supplements her pleading with additional cursory assertions that Attorney General Denn is aware of and participating in a wide-ranging conspiracy to obstruct justice and violate her constitutional and civil rights, (id. ¶¶ 220, 231, 236-37, 248); that once Rumanek commenced her lawsuit, the state court required her to communicate only with the court's counsel, a subordinate of Attorney General Denn, (id. ¶ 225); and that Attorney General Denn is liable for monetary and reputational damages,

---

[9] It is not entirely clear from Rumanek's pleading whether defendants are sued in their official capacities or their personal capacities.  To the extent Attorney General Denn is sued in his official capacity as the Attorney General of Delaware, he is entitled to Eleventh Amendment immunity.  See U.S. CONST. amend. XI; see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008).  None of the exceptions to Eleventh Amendment immunity apply in this case.  See Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002) (collecting cases).

(id. ¶ 239).  Leave to amend to include these "allegations" would be futile.  We will dismiss the claims against Attorney General Denn with prejudice.

**D.    Section 1985 Claims**

Rumanek alleges that defendants collectively conspired to violate her civil rights in contravention of 42 U.S.C. § 1985(2) and (3).  (Doc. 93 at 1).  Section 1985(2) prohibits conspiracies to intimidate a party, witness, or juror, or to obstruct justice, see 42 U.S.C. § 1985(2), and Section 1985(3) prohibits conspiracies to deprive persons of constitutional rights, see id. § 1985(3).  The reach of Section 1985(3) "is limited to private conspiracies predicated on 'racial, or perhaps otherwise class based, invidiously discriminatory animus.'"  Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 802 (3d Cir. 2010) (quoting Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997)).  Likewise, Section 1985(2) has been construed to require racial or other class-based discriminatory intent.  See Burgos v. Canino, 641 F. Supp. 2d 443, 457-58 (E.D. Pa. 2009) (quoting Kush v. Rutledge, 460 U.S. 719, 726 (1983)), aff'd, 358 F. App'x 302 (3d Cir. 2009).

As a threshold matter, the court has found supra that Rumanek's pleading contains a dearth of allegations substantiating any agreement among the alleged coconspirators.  An agreement is "the sine qua non of a conspiracy," without which a conspiracy claim necessarily cannot succeed.  Savage v. Judge, 644 F. Supp. 2d 550, 561 (E.D. Pa. 2009) (quoting Eichelman v. Lancaster County, 510 F. Supp. 2d 377, 392-93 (E.D. Pa. 2007)); see also Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)).  This deficiency alone is fatal to Rumanek's claims.  Moreover, neither Rumanek's

operative complaint nor her proposed amended pleadings suggest that defendants acted with racial or other class-based discriminatory animus. *Per contra*, Rumanek explicitly alleges that defendants acted to protect their personal financial interests, the financial interests of State Farm, and their alleged goal of reducing plaintiffs' verdicts in Delaware. (<u>E.g.</u>, Doc. 93 ¶¶ 39, 74, 101, 103, 141). These allegations necessarily defeat her Section 1985 claims. We will dismiss these claims with prejudice.

### E. Title VII, ADA, and FMLA Claims

Rumanek invokes Title VII, the ADA, and the FMLA at various points throughout her pleadings. Rumanek does not defend those claims in her responses to defendants' Rule 12 motions. Accordingly, to the extent Rumanek intended to assert claims under Title VII, the ADA, or the FMLA, those claims are deemed to be waived. <u>See</u> <u>Stauffer v. Navient Solutions, LLC</u>, 241 F. Supp. 3d 517, 519 n.3 (M.D. Pa. 2017) (Conner, C.J.) (collecting cases). We note for the parties' benefit, as we did *supra*, that Rumanek does not allege that any defendant in the matter *sub judice* acted with discriminatory intent (based on race, disability, or other protected class status), nor does she allege that she was or could have been denied any rights under the FMLA by any of the various defendants, none of whom was her employer. We will dismiss these claims with prejudice.

### F. Claim for Violation of Codes of Professional Conduct

Rumanek claims that the attorney defendants violated the American Bar Association's Model Code of Professional Conduct throughout the course of the state and federal court litigation. (<u>See</u> Doc. 93 ¶ 192). Attorneys practicing in the

Delaware state courts are subject to the Delaware Lawyers' Rules of Professional Conduct.  See DEL. LAWYER'S RULES OF PROF'L CONDUCT.  The conduct of attorneys practicing in this court is subject to the American Bar Association's Model Rules of Professional Conduct.  See LOCAL RULES OF CIVIL PRACTICE AND PROCEDURE OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE R. 83.6(d).  Courts have consistently held that the Delaware Lawyers' Rules do not create a private cause of action.  See Mangino v. Richards Layton & Finger, 160 F. App'x 268, 269 (3d Cir. 2005) (nonprecedential); Shahin, 606 F. Supp. 2d at 539 (citing Mangino, 160 F. App'x at 269; Brooks-McCollum v. Shareef, No. 05C-12-198MMJ, 2006 WL 3587246, at *2 (Del. Super. Ct. 2006)).  And the American Bar Association's Model Code expressly states that the perceived violation of a rule does "not itself give rise to a cause of action against a lawyer."  MODEL CODE OF PROF'L RESPONSIBILITY, Scope (AM. BAR. ASS'N 2016).  We will dismiss Rumanek's allegations brought under the Delaware Lawyers' Rules and the American Bar Association's Model Code with prejudice.

### G.     Leave to Amend

Rumanek also requests leave to amend her pleading to include an additional claim and four more defendants.  Federal Rule of Civil Procedure 15(a)(2) directs the court to "freely give leave [to amend] when justice so requires."  FED. R. CIV. P. 15(a)(2).  The decision whether to grant leave to amend is committed to the sound discretion of the district court.  See Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993) (citing Bechtel v. Robinson, 886 F.2d 644, 647 (3d Cir. 1989)).  Under this standard, courts generally will grant leave to amend unless the opposing party can

establish undue delay, bad faith on the part of the movant, futility of amendment, or prejudice to the nonmoving party.  See Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006); see also Foman v. Davis, 371 U.S. 178, 182 (1962).  An amendment is futile if the proposed amended pleading "would not survive a motion to dismiss for failure to state a claim."  Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014) (citing Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010)).

Rumanek's proposed amended complaint purports to add a claim for violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1963 *et seq.*  RICO statute creates a civil remedy for "[a]ny person injured in his business or property" by a violation of the statute's substantive provisions.  18 U.S.C. § 1964(c).  Other than broadly referencing RICO and asserting in summary fashion that defendants engaged in a "pattern of criminal activity" and "obstruction of justice," Rumanek's various proposed amended pleadings do not articulate a viable civil RICO claim.  Leave to amend to include this claim would be futile.

Rumanek also seeks to assert claims against Kevin Healy, her first attorney in the state court litigation, and John Cerino, the Clerk of Court for this judicial district, as well as the state of Delaware and the United States of America.  (See Doc. 135-1).  The proposed claims are meritless.  Rumanek's claims against the new individual defendants are premised on the same general theories as her claims against the attorney defendants and Cruikshank, respectively, and are without merit for the same reasons.  Her claim against the state of Delaware—as to which

Rumanek has alleged no wrongdoing—is barred by sovereign immunity. And

Rumanek alleges no facts whatsoever as to the United States of America. We will

deny Rumanek's request for leave to file a tenth amended complaint against these

proposed defendants.[10]

## IV.    <u>Conclusion</u>

For the reasons stated herein, the court will dismiss Rumanek's sixth

amended complaint and deny leave to amend. An appropriate order shall issue.


<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:        September 17, 2018

---

[10] We do not construe Rumanek's sixth amended complaint or any of her
proposed amended pleadings as stating a state law claim for professional negligence
or other intentional tort claim. Nonetheless, to the extent Rumanek intends to state
such a claim, the court declines to exercise supplemental jurisdiction. <u>See</u> 28 U.S.C.
§ 1367(c)(3); <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995)
(quoting <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1996)).